# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 5, 2007

## STATE OF TENNESSEE v. WILLIAM JOE MURPHY

**Direct Appeal from the Circuit Court for McNairy County**
**No. 2003     Weber McCraw, Judge**

---

**No. W2006-02199-CCA-R3-CD  - Filed September 13, 2007**

---

The defendant, William Joe Murphy, was convicted by a McNairy County Jury of aggravated assault, a Class C felony.  Subsequently, he was sentenced to five years in confinement as a Range I offender. On appeal, the defendant presents two issues for review: (1) whether the evidence was sufficient to sustain his conviction; and (2) whether the trial court improperly enhanced his sentence.  Upon review of the full record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN, J. joined and JOHN EVERETT WILLIAMS, J. concurred in result.

Shana Johnson (on appeal), Sr. Assistant Public Defender, and Dave Stockton (at trial), Assistant District Public Defender, Somerville, Tennessee, for the appellant, William Joe Murphy.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Joe Van Dyke and Cameron B. Williams, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The following evidence was presented at trial.  Constance Murphy, the defendant's wife, testified that she and her husband had a marital dispute, and as a result, she took her four children and left her house to stay with her sister.  On January 1, 2006, around 9:00 a.m., she returned to her house to get some clothes for her and her children so that they could attend church.  Upon her arrival, the defendant approached and repeatedly stated, "I need to talk to you."  However, Mrs. Murphy

ignored the defendant and went to her room to get clothes and instructed her children to get their clothes as well. The defendant then became agitated and demanded that Mrs. Murphy talk to him.

Mrs. Murphy testified that she and the defendant went to the living room to talk and the defendant grew increasingly angry with her. The defendant left the living room briefly and returned with a knife and a section of rope. According to Mrs. Murphy, the defendant stated, "[l]ook what you made me do, look what you made me do . . . I told you not to ever take my kids from me again." At this time, the defendant "wagged" the knife in front of her face and told her, "I'll tie you up and I'll stab you twenty times before I get tired." Mrs. Murphy recalled that she was very scared and believed the defendant meant to kill her. She "felt like the madder he got, the less likely [she] would walk out."

Mrs. Murphy testified that the defendant grabbed her by the hair, drug her from the couch onto the floor, and began breaking furniture and throwing objects at her. At one point, Mrs. Murphy's two daughters came into the living room and Mrs. Murphy told them to go back to their rooms. Mrs. Murphy stated that after the children returned to their rooms, the defendant began "hitting" her head. She began screaming when the defendant starting hitting her. The defendant told Mrs. Murphy he was going to kill their oldest daughter, Tia, if Mrs. Murphy did not instruct Tia to return to her room. The defendant continued to hit Mrs. Murphy repeatedly. Mrs. Murphy testified that Tia approached the defendant a second time, crying and telling the defendant to stop hitting her mother. Mrs. Murphy recalled that the defendant told Tia, "If you don't go back, I'm going to hurt you."

Mrs. Murphy testified that she stopped crying soon after the defendant threatened her daughter and she attempted to talk to him again. At that time, the defendant stated, "I've come too far. I can't turn back now. I'm going to go to jail for murder. I'm not going to go jail for assault." Mrs. Murphy believed the defendant intended to kill her and she began screaming for her children. She begged the defendant to allow her to say good-bye to her children.

Mrs. Murphy testified that the defendant stood over her, pinning her thigh to the ground with his knee while holding the knife in his hand. He repeatedly told her he would stab her twenty times before he got tired, and said the knife had a serrated edge and "would go in sharp because of the point and when he got ready to pull it out it would tear the flesh." As Mrs. Murphy hugged and kissed her sons, the defendant told her, "You don't want to get blood on the boys, do you?"

Tia testified that she saw the defendant holding the knife in front of Mrs. Murphy while making this statement. Tia testified that she was afraid for her own life.

Michael Monroe testified that he was the pastor of the church Mrs. Murphy and her children were attending. Pastor Monroe stated that he, his wife, and an associate pastor, visited Mrs. Murphy's house after she and her children failed to show up for the morning service. When he opened the door to the house, he observed that the defendant had a knife in his hand. According to Pastor Monroe, the defendant appeared distraught and banged the knife on the counter. Pastor

2

Monroe explained that the defendant "wasn't violent or anything" and went outside to talk. He and the associate pastor then proceeded to talk with the defendant for the next two hours. They attempted to calm the defendant and tried to get him to permit his wife and children to leave.

Pastor Monroe testified that his wife, Mary, went into the house and helped Mrs. Murphy and the children pack to leave. Outside, the police arrived and the defendant calmed down noticeably. The defendant remained calm until Mrs. Murphy proceeded to leave the house with the children. As Mrs. Murphy attempted to leave, the defendant became enraged again. He shouted at Mrs. Murphy and threatened to burn down her relatives' homes if she left. The police then arrested the defendant for aggravated assault.

Mary Monroe testified similarly. Mrs. Monroe added that she observed Mrs. Murphy and her children scared, upset, and crying. While Mrs. Murphy and her children were packing clothes, the defendant said "he would kill her family, all of them."

The defendant testified on his own behalf at trial. The defendant admitted that he grabbed the knife because he wanted to scare Mrs. Murphy. He also admitted that he pulled Mrs. Murphy's hair and slapped her with his right hand. Contrary to the testimony offered by Mrs. Murphy and Tia, the defendant asserted that he did not have the knife in his hand when he hit Mrs. Murphy. He did, however, admit guilt, stating, "I'm not pretending I'm innocent about the assault at all." The defendant further testified that he had been the victim of several assaults by his wife prior to this occasion.

Based on the evidence, the jury convicted the defendant of aggravated assault. Following his conviction, he was sentenced to five years in confinement as a Range I, standard offender.

**ANALYSIS**

**I. Sufficiency of the Evidence**

On appeal, the defendant argues that the evidence presented at trial was insufficient to sustain a conviction for aggravated assault. Specifically, the defendant contends that his holding of the knife did not constitute "display of a deadly weapon" as defined in Tenn. Code Ann. § 39-13-102(a)(1)(B) (2006).

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to the appellate court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves

all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

Under Tennessee statute, a defendant may be found guilty of aggravated assault if he "[i]ntentionally or knowingly commits an assault" and "uses or displays a deadly weapon". Tenn. Code Ann. § 39-13-102 (2006). "Weapons may be placed, generally, in two categories, namely: deadly per se, such as fire arms; and deadly by reason of the manner in which they are used. It is generally recognized by the majority of the States that, 'a dangerous or deadly weapon is any weapon or instrument which, from the manner in which it is used or attempted to be used, is likely to produce death or cause great bodily injury.'" *Morgan v. State,* 415 S.W.2d 879, 882 (Tenn. 1967).

In the instant case, the evidence established that the defendant displayed a knife in the course of making threats toward Mrs. Murphy and assaulting her. Additionally, the evidence established that the defendant had a knife in his possession, was visibly angry, and made numerous threats to both his wife and daughter while holding the knife. Moreover, the defendant admitted that he physically assaulted his wife. Clearly, a jury could find beyond a reasonable doubt that the defendant knowingly assaulted the victim while using or displaying a deadly weapon. Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction of aggravated assault. The defendant is not entitled to relief on this issue.

## II. Sentencing

The defendant argues that the trial court erred in imposing an excessive sentence, which was erroneously enhanced by consideration of the "defendant's . . . previous history of criminal convictions or criminal behavior . . ." and by a determination that the aggravated assault "involved more than one (1) victim." *See* Tenn. Code Ann. § 40-35-114(1), -(3) (2006).

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401. This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. We will uphold the sentence imposed by the trial court if (1) the sentence complies with our sentencing statutes, and

(2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001); *see also* Tenn. Code Ann. § 40-35-210(f).

Before a trial court sentences a convicted defendant, it must consider: (1) the evidence received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing; (4) the arguments of counsel relative to sentencing alternatives; (5) the nature and characteristics of the criminal conduct involved; (6) any mitigating or enhancement factors; (7) any statements made by the defendant in his or her own behalf; and (8) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210. If our review reveals that the trial court complied with the statutory sentencing procedure, and the court's findings are supported by the record, we cannot disturb the sentence even if we would have preferred a different result. *See State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001); *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App.1991).

With regard to the court's consideration of the defendant's prior criminal history and conduct under Tenn. Code Ann. § 40-35-114(1), a review of the record indicates that the trial court followed statutory procedure. The record reflects that the defendant had a previous history of criminal convictions including drug possession, shoplifting, driving with a revoked license, and failure to appear in court. The defendant's pattern and history of prior criminal convictions is therefore well established.

The record further reflects that the trial court found the defendant's daughter, Tia, as a victim of the defendant in this incident for the purpose of Tenn. Code Ann. § 40-35-114(3). In *Imfeld,* our supreme court has held that "there cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim." 70 S.W.3d 698, 706 (Tenn. 2002). In *Imfeld*, the court rejected the argument that the multiple victims factor could be applied "on the basis that there were individuals in the accident on behalf of whom no charges were filed." *Id.*; *see also State v. Mitchell Lee Blankenship,* No. E2005-02753-CCA-R3-CD, 2006 WL 3751201, at *7 (Tenn. Crim. App., at Knoxville, Dec. 21, 2006). *Blankenship* is particularly instructive in the instant matter, because the defendant was charged with aggravated assault against his spouse in an incident where his children were present and were used as an enhancement factor to determine the defendant's sentence. *Id.* at *8. In *Blankenship,* the appellate court applied the *Imfeld* test and found that the "more than one victim" test of Tenn. Code Ann. § 40-35-114(3) could not be applied to enhance the defendant's sentence because no charges were filed on behalf of the defendant's children. However, the supreme court noted that the trial court was able to apply the defendant's criminal history of convictions to enhance the defendant's sentence in that case. *Id.* In the instant case, no charges were filed on behalf of Tia, Mrs. Murphy's daughter. Therefore, following the court's reasoning in *Imfeld* and *Blankenship*, the trial court cannot consider her for enhancement under Tenn. Code Ann. § 40-35-114(3).

Notwithstanding the trial court's error in finding Tia a victim for the purpose of applying enhancement factor (3), we determine that on the basis of the defendant's prior convictions alone, the trial court properly enhanced the defendant's sentence. Because the trial court enhanced the

defendant's sentence two years for a total sentence of five years, the court was still below the maximum term of six years and within the appropriate sentencing range. Accordingly, we find no error in the sentence ordered by the trial court. The defendant is not entitled relief on this issue.

## CONCLUSION

Based on the foregoing authorities and law, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE